

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BROADWAY NATIONAL BANK d/b/a
BROADWAY BANK,
            Plaintiff,

-vs-                                                Case No. A-15-CA-1056-SS

PLANO ENCRYPTION TECHNOLOGIES, LLC,
            Defendant.

## ORDER

BE IT REMEMBERED on the 28th day of March 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court is Defendant Plano Encryption Technologies, LLC's Motion to Dismiss Plaintiff's Original Complaint [#10]; Plaintiff Broadway National Bank d/b/a Broadway Bank's Response [#13] thereto; Defendant's Reply [#14] in support; Plaintiff's Opposed Motion for Leave to File Sur-Reply [#16]; and Defendant's Response [#18] thereto[1]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Defendant Plano Encryption Technologies, LLC (PET) is a patent licensing company which owns a portfolio of United States patents related to secure data transmission and storage technology. PET's sole business is to enforce its intellectual property; PET does not make or sell any products or services. *See* Mot. Dismiss [#10-1] Ex. A (Liddle Decl.) ¶ 5; Compl. [#1] ¶ 8.

---

[1] Plaintiff's Opposed Motion for Leave to File Sur-Reply [#16] is GRANTED.



On July 10, 2015, PET's CEO and Corporate Counsel, Bradley D. Liddle, sent a letter to the CEO and Vice Chairman of Plaintiff Broadway National Bank d/b/a Broadway Bank claiming it had a "good faith basis" to believe Broadway Bank's mobile banking applications and online banking features were infringing claims on three of its patents. *See* Compl. [#1-5] Ex. D (the Liddle Letter) at 1. Specifically, Liddle accused Broadway Bank's "Apple mobile apps" of infringing on U.S. Patent No. 5,991,399 (the '399 patent) and U.S. Patent No. 5,974,550 (the '550 patent), and Broadway Bank's "online banking features" of infringing on U.S. Patent No. 6,587,858 (the '858 patent) (collectively, the Patents-in-Issue). *Id.* To "allow Broadway to continue its use of these technologies," Liddle proposed "a non-exclusive license to its Patent Portfolio for an amount that would be a fraction of a reasonable royalty calculation it would otherwise be entitled to as damages for patent infringement." *Id.* at 2. While Liddle stated PET's intention was to "open a meaningful dialogue toward a mutually beneficial business resolution," he also alluded to the threat of litigation, citing PET's active enforcement of its patent rights in a recently filed lawsuit against Citizens National Bank. *Id.* at 1 (citing *Plano Encryption Techs., LLC v. Citizens Nat'l Bank*, Civ. No. 2:15-cv-1168 (E.D. Tex filed June 29, 2015)).

This is apparently not the only action PET has taken against banks related to the enforcement of the Patents-in-Issue. Since sending the Liddle Letter, PET filed three additional complaints in the Eastern District of Texas for infringement of '399 patent and the '550 patent. *See Plano Encryption Techs., LLC v. Am. Bank of Tex.*, No. 2:15-cv-1273-JRG (E.D. Tex., filed July 15, 2015); *Plano Encryption Techs., LLC v. Citizens Nat'l Bank*, No. 2:15-cv-1168-JRG (E.D. Tex., filed June 29, 2015); *Plano Encryption Techs., LLC v. Independent Bank*, No. 2:15-cv-1382-JRG (E.D. Tex., filed July 31, 2015); *Plano Encryption Techs., LLC v. Guar. Bank & Trust, N.A.*, No. 2:15-cv-1480-JRG

(E.D. Tex., filed Sept. 3, 2015). These lawsuits were consolidated with the *Citizens Nat'l Bank* action for pretrial purposes on October 28, 2015. *See* Consolidation Order [#17], *Plano Encryption Techs., LLC v. Am. Bank of Tex. et al.*, No. 2:15-cv-1273-JRG (E.D. Tex., Oct. 29, 2015).

Additionally, multiple banks have filed declaratory judgment actions against PET in response to PET's cease-and-desist letters. *See Nat'l Bank d/b/a The Nat'l Bank of Central Tex. v. Plano Encryption Techs., LLC*, 6:15-cv-249-WSS (W.D. Tex., filed August 28, 2015); *Jack Henry & Assocs., Inc. et al. v. Plano Encryption Techs., LLC*, 3:15-cv-3645-N (N.D. Tex., filed Nov. 19, 2015); *Fidelity Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC et al.*, No. 1:14-cv-777-LPS-CJB (D. Del., filed Sept. 3, 2015).

On November 20, 2015, Broadway Bank filed the current declaratory judgment action, seeking a declaration of non-infringement with respect to the '399 patent, the '550 patent, and the '858 patent. *See* Compl. [#1]. On January 20, 2016, PET filed a motion to dismiss for lack of venue pursuant to Rule 12(b)(3) or, in the alternative, asking the Court to decline to exercise jurisdiction on equitable grounds. *See* Mot. Dismiss [#10]. Broadway Bank responded and also moved for jurisdictional discovery. The motions are now ripe for consideration.

## Analysis

PET contends venue is improper in this Court because it does not have sufficient contacts with the Western District, and because a substantial part of the events giving rise to the claim occurred in Plano, not in Austin or San Antonio. Broadway Bank, naturally, disagrees. Broadway Bank contends PET has waived the right to challenge venue by failing also to challenge personal jurisdiction under Rule 12(b)(2). Alternatively, Broadway argues PET has sufficient contacts with

the Western District and the sole event giving rise to this action—receipt of the Liddle Letter—occurred in San Antonio.

## I. Legal Standard—Venue

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a party may move to dismiss an action on the basis of improper venue. FED. R. CIV. P. 12(b)(3). Once challenged, the burden of sustaining venue lies with the plaintiff. *See Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).[2] If, as here, there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts that, taken as true, would establish venue. *Id.* The court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Id.*; *see also Braspetro Oil Servs., Co. v. Modec (USA), Inc.*, No. 06-20561, 2007 WL 1425851, at *2 (5th Cir. 2007). Further, in deciding whether venue is proper, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

As a general rule, a declaratory judgment alleging non-infringement is governed by the general venue statute, 28 U.S.C. § 1391. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990); *see also Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974,

---

[2] While there is a split of authority among federal courts and in the Fifth Circuit with regard to which party shoulders the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue, it appears the majority place the burden with the plaintiff. *Compare LAS Enters., Inc. v. Accu–Systems, Inc.*, No. 11-2196, 2011 WL 6697043, at *4 (E.D. La. Dec. 20, 2011), *and Roach v. Bloom*, No. 3:08-cv-439-L, 2009 WL 667218, at *2 (N.D. Tex. Mar. 16, 2009), *with Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002) *and Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 518, 519 (N.D. Tex. 1990); *see also Silva v. Frankford Crossing Shopping Ctr., TX, LP*, No. 3:12-cv-2014-O-BH, 2013 WL 1264155, at *3 (N.D. Tex. Feb. 22, 2013) ("Although the Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, most district courts within the circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum."). This approach "may be considered the better view because it is consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted." 14D CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3826 (4th ed. 2013).

988–99 (N.D. Iowa 2013); *United Sonics, Inc. v. Shock*, 661 F. Supp. 681, 682 (W.D. Tex. 1986). Pursuant to § 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendant are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action.

28 U.S.C. § 1391(b). In a state with multiple districts, such as Texas, a corporate defendant who is subject to personal jurisdiction in the state at time the action is commenced is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state . . ." *Id.* § 1391(d). Thus, "a plaintiff must demonstrate that the defendant has sufficient minimum contacts with the district where the suit was brought to show venue was proper." *Garnet Digital, LLC v. Apple, Inc.*, 893 F. Supp. 2d 814, 815 (E.D. Tex. 2012).

## II.    Legal Standard—Personal Jurisdiction

Because venue turns on the establishment of personal jurisdiction over PET in this District, a brief explication of personal jurisdiction principles is helpful. Personal jurisdiction is a question of law, and because Broadway Bank brings the case pursuant to the patent laws, the Court applies Federal Circuit law in addressing the jurisdictional issue. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

"Determining whether jurisdiction exists over an out-of-[district] defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123

F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985)). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093. The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established minimum contacts in the forum state." *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts" may give rise to either general or specific jurisdiction. General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics*, 566 F.3d at 1017 (internal quotation marks omitted). The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third prong. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

In the declaratory judgment context, the claim arises out of or relates to the activities of the defendant patentee in enforcing the patents in suit. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552

F.3d 1324, 1332 (Fed. Cir. 2008). "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* at 1332–33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

"In many declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter,' and the patentee may have little contact with the forum beyond this letter." *Avocent*, 552 F.3d at 1333. In *Avocent*, the Federal Circuit summarized the court's treatment of "infringement" or "cease-and-desist" letters as they pertain to the exercise of personal jurisdiction:

> While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because "the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters," *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003), we have held that, based on "policy considerations unique to the patent context," *id.* at 1206, "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* 'do not suffice to create personal jurisdiction,'" *id.* at 1202 (quoting *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1359–60 (1998)) (emphasis added). This is "because to exercise jurisdiction in such a situation would not 'comport with fair play and substantial justice.'" *Id.* (quoting *Red Wing Shoe*, 148 F.3d at 1359–60). "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe*, 148 F.3d at 1360–61; *see also Silent Drive*, 326 F.3d at 1206. Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202 (emphasis added); *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) (noting that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among *the*

> *defendant*, the forum, *and the litigation.*'" (emphases added) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, (1977)).

*Id.* at 1333–34 (citations altered).

The Federal Circuit has repeatedly addressed the question of what sort of conduct amounts to "other activities," which in some identifiable way "relate to" enforcement of the patents in the forum, and the court summarized its precedent on the issue in *Avocent*:

> While "the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed," *Akro*, 45 F.3d at 1547 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), and *Calder*, 465 U.S. 783), we have consistently required the defendant to have engaged in "other activities" that relate to the *enforcement* or the *defense of the validity* of the relevant patents. Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum.

*Id.* at 1334–35 (citations and footnote omitted). In contrast to exclusive licensing agreements and other undertakings that impose enforcement obligations on a patentee or its licensee, the defendant patentee's own commercialization activity does not reflect "other activities" supporting specific jurisdiction in a declaratory judgment action. *Id.* at 1335. "What the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because 'the federal patent laws do not create any affirmative right to make, use, or sell anything.'" *Id.* (quoting *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997)).

## II. Jurisdictional Facts

In its jurisdictional allegations, Broadway Bank asserts two reasons why venue is proper in the Western District. First, Broadway Bank alleges venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claims and a substantial part

of the property that is the subject of the action is situated in the Western District of Texas," namely, Broadway Bank's receipt of the Liddle Letter in the Western District created the controversy and gave rise to this action. Compl. [#1] ¶ 6; *see also* Sur-Reply [#16-1] at 6. Further, each of Broadway Bank's 39 locations are situated within the Western District and the allegedly infringing mobile applications are licensed to Broadway Bank by Q2 Software, Inc., which is located in Austin, Texas. *See* Response [#13-3] (Krause Decl.) ¶¶ 3–4, 6. Second, Broadway Bank alleges venue is proper under 28 U.S.C. § 1391(b)(1) because "PET is subject to personal jurisdiction in Texas and the Western District of Texas with respect to the claim." Compl. [#1] ¶ 6.

As a Texas limited liability company with its sole office in Plano, PET acknowledges it is subject to personal jurisdiction in Texas. *See* Liddle Decl. ¶ 4. However, PET disputes whether it has sufficient contacts with the Western District to support a finding of proper venue under 28 U.S.C. § 1391(d), which limits the scope of 28 U.S.C. § 1391(b)(1). According to Liddle, PET does not reside in the Western District for purposes of determining venue because: it does not have any offices in the Western District of Texas; PET's sole officer (Liddle) does not reside in the Western District; no officer or employee of PET has ever traveled to the Western District for the purpose of conducting business of any kind on behalf of PET; PET has not filed any suits in the Western District; and all of PET's business is conducted out of its office in Plano, which is situated in the Eastern District of Texas. *Id.* ¶¶ 4, 5. PET claims the only relevant contact with the Western District is the delivery of the Liddle Letter to Broadway Bank's officers at its address in San Antonio, Texas.

Broadway Bank disputes whether the Liddle Letter is PET's only relevant contact and directs the Court to at least two other litigation-related contacts PET has with the Western District. First, Broadway Bank presents four nearly identical infringement letters sent to other banks in the Western

District of Texas, including: (1) Extraco Banks, located in Temple, Texas; (2) Citizens State Bank, located in Somerville, Texas; (3) Jefferson Bank, located in San Antonio, Texas; and (4) National Bank, located in Gatesville, Texas. *See* Response [#13-2] Exs. B, E. Second, Broadway Bank points to PET's defense of the declaratory judgment action brought by The National Bank of Central Texas, in which PET entered an appearance in the Western District and sought dismissal of the suit with prejudice without contesting personal jurisdiction or venue. *See* Joint Mot. Dismiss [#16]; Order Dismissal [#17], in *Nat'l Bank d/b/a The Nat'l Bank of Cent. Tex. v. Plano Encryption Techs., LLC*, 6:15-cv-249-WSS (W.D. Tex. Nov. 13, 2015). Broadway Bank further notes that all of the relevant financial and technical documents, as well as all of the Broadway Bank witnesses, are located in the Western District. Krause Decl. ¶ 7–8.

### III. Application

As an initial matter, Broadway Bank contends PET has waived the right to challenge venue by failing to also file a Rule 12(b)(2) motion challenging personal jurisdiction. *See* Resp.[#13] at 2–3 (citing *KMR Capital, LLC v. Bronco Energy Fund, Inc.*, No. 06-CA-189-OG, 2006 WL 4007922, at *5 (W.D. Tex. July 11, 2006)); *see also* FED. R. CIV. P. 12(h)(1). According to Broadway Bank, by failing to move to dismiss the case for lack of personal jurisdiction, PET has conceded it is subject to personal jurisdiction in the Western District and therefore is deemed to "reside" here for purposes of determining venue. *Id.*

This argument does not have merit, as it ignores § 1391(d), which clearly requires a corporate defendant have sufficient contacts with the forum district to support personal jurisdiction *if that district were treated as a separate State*, even when personal jurisdiction is otherwise proper in the state. Therefore, waiving the right to challenge personal jurisdiction in Texas under Rule 12(b)(2)

did not waive PET's right to challenge venue in the Western District of Texas under Rule 12(b)(3). *See Secure Axcess, LLC v. Trustmark Nat'l Bank*, No. 6:13-CV-788, 2014 WL 3884258, at *2 (E.D. Tex. Aug. 7, 2014). Indeed, it would be illogical to require PET, an in-state corporate defendant, to file a frivolous motion for lack of personal jurisdiction merely to preserve the right to challenge venue. Each of the cases Broadway Bank cites in favor of its position are inapposite, as they involve out-of-state corporate defendants who could have moved to dismiss for lack of personal jurisdiction but chose not to.

Because the Court finds PET has not waived its argument this District is not the proper venue, the Court must decide whether PET resides in the Western District of Texas, which involves an evaluation of (1) whether PET has sufficient contacts with the District to subject it to personal jurisdiction if the Western District were considered as a separate state, *see* §§ 1391(b)(1) and (d); or (2) whether a substantial part of the events occurred in this District, *see* § 1391(b)(2).

### A.    Is PET Subject to Personal Jurisdiction in the Western District of Texas?

The Court finds venue is not proper in the Western District because Broadway Bank has not shown PET's contacts with this District are sufficient to subject it to personal jurisdiction if the Western District were a separate state. *See Garnet Digital v. Apple Inc.*, 893 F. Supp. 2d 814, 815 (E.D. Tex. 2012). The totality of PET's undisputed contacts with the Western District of Texas are as follows: (1) the Liddle Letter; (2) the multiple cease-and-desist letters sent to other banks in the Western District; and (3) participation as defendant in the *National Bank* litigation. The application of Federal Circuit precedent makes clear that the cease-and-desist letters offering non-exclusive licenses in the Patents-in-Issue sent from PET to banks in the Western District, including the Liddle Letter, do not alone suffice to justify personal jurisdiction. *Avocent*, 552 F.3d at 1333–34; *see also*

*Red Wing Shoe*, 148 F.3d at 1361 (finding cease-and-desist letters insufficient to create personal jurisdiction even in the event "a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products").[3] Consequently, the cease-and-desist letters are not sufficient to establish corporate residency in the Western District of Texas for purposes of venue.

Broadway Bank argues *Avocent*'s conclusion is not applicable here, and therefore the cease-and-desist letters do support personal jurisdiction and, in turn, venue. Broadway Bank argues the plain statutory language of § 1391(d)—"a corporation shall be deemed to reside in any district . . . within which *its contacts would be sufficient to subject it to personal jurisdiction*"—only involves an inquiry into the first prong of the personal jurisdiction analysis, namely, whether the defendant has "minimum contacts" with the forum, and does not involve an inquiry into whether litigating in the forum would offend "traditional notions of fair play and substantial justice." In other words, because this motion involves a venue challenge implicating § 1391(d), whether litigating in this forum is fair is not part of the analysis. Broadway Bank contends this is "crucial" because the *Avocent* court held cease-and-desist letters prong satisfied the minimum contacts prong but only failed the fairness prong, and therefore *Avocent* actually supports the conclusion PET "resides" in the Western District for purposes of venue. *See* Resp. [#13] at 4–6 (citing *Avocent*, 552 F.3d at 1333).

While its position is a creative attempt at sidestepping *Avocent*, Broadway Bank presents no authority in support, and the Court finds its reading contrary to Federal Circuit precedent and the

---

[3] PET's status as a patent assertion entity, whose sole business purpose is enforcing its patents, does not alter this conclusion. The Federal Circuit has continued to cite *Red Wing* and *Avocent* favorably for the proposition sending cease-and-desist letters are not the type of patent enforcement or defense efforts "to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics*, 556 F.3d at 1020 (citing *Avocent*, 552, F.3d at 1336); *see also Catalyst Medium Four, Inc. v. CardShark, LLC*, No. A-14-CA-1007-SS, 2015 WL 1412591, at *7 (W.D. Tex. Mar. 26, 2015).

plain language of § 1391(d). Indeed, *Avocent* clearly holds that a patentee's cease-and-desist letter, although purposefully directed to the forum district, "does not suffice to create personal jurisdiction," and § 1391(d) explicitly confers corporate residency in a district "within which its contacts would be sufficient to *subject it to personal jurisdiction.*" *See* 552 F.3d at 1333. Absent Federal Circuit authority for doing so, the Court refuses to read the fairness prong of the personal jurisdiction inquiry out of § 1391(d). *See id.* ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." (quoting *Red Wing Shoe*, 148 F.3d at 1359–60)). The Court finds the cease-and-desist letters sent by PET to various banks in the Western District of Texas are not alone sufficient to establish personal jurisdiction in this District if it were a separate state, and thus PET cannot be said to "reside" here for venue purposes.

Consequently, PET can only be subject to personal jurisdiction in this district if it is engaging in "other activities" that relate to the enforcement or the defense of the validity of the relevant patents in addition to purposefully directing the Liddle Letter to Broadway Bank. *See id.* at 1334–35. Broadway Bank argues PET's defense of the validity of the Patents-in-Issue in the *National Bank* litigation, and specifically its agreement to dismiss the case without challenging personal jurisdiction or venue, are the type of "judicial or extra-judicial patent enforcement activities within the forum" that would subject it to personal jurisdiction pursuant to the teachings of *Avocent*. *See* Resp. [#13] at 6–7.

However, the test for minimum contacts, and in turn personal jurisdiction, focuses on PET's actions with the forum district and not National Bank's, a third party. *See, e.g., Autogenomics*, 566 F.3d at 1020; *Burger King*, 471 U.S. at 475. PET did not initiate the *National Bank* litigation or file

a responsive pleading and there is no indication PET and National Bank agreed to an "exclusive license agreement or other undertaking which imposes enforcement obligations" on PET in this District. *Avocent*, 552 F.3d at 1334–35 ("Examples of these 'other activities' include *initiating* judicial or extra-judicial patent enforcement . . ." (emphasis added)); *cf. Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) (finding personal jurisdiction where patentee admitted *initiating* "a suit seeking to enforce the same patent . . . against other parties, unrelated to this action, in the same district court . . ."). Consequently, PET's appearance in the Western District for the sole purpose of dismissing the *National Bank* litigation does not qualify as the kind of "other activities" that would render subject PET to future declaratory judgment actions for non-infringement in this forum. *Avocent*, 552 F.3d at 1334–35. Indeed, such a rule would disincentivize patentee defendants from settling declaratory actions in foreign districts without first challenging personal jurisdiction or venue for fear of consenting to jurisdiction or venue in suits subsequently brought by other alleged infringers.

In short, Broadway Bank has not met its burden of establishing PET has engaged in activities that would subject it to either general or specific personal jurisdiction in the Western District of Texas, and thus PET cannot be said to reside in the District for purposes of establishing venue under §§ 1391(b)(1) and (d).

### B. Did a Substantial Part of the Events Giving Rise to the Claim Occur in the Western District of Texas?

The Court next turns to § 1391(b)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omission giving rise to the claim occurred." Broadway Bank argues venue is proper under this subsection because its receipt of the Liddle Letter

in the Western District caused the injury giving rise to this declaratory judgment action. In other words, according to Broadway Bank, the Liddle Letter *is the event* that gave rise to its claim. *See* Sur-Reply [#16-1] Ex. A at 6. The Court disagrees. The Liddle Letter itself, which operates to notify Broadway Bank of potential infringement and to offer to negotiate a non-exclusive license, is not *the event* giving rise to the declaratory claim. Rather, "the source of the cause of action for non infringement is the ownership and existence of the copyright or patent." *Modern Comput. Corp. v. Ma*, 862 F. Supp. 938, 947 (E.D.N.Y. 1994); *see also MiJack Prods., Inc. v. Taylor Grp., Inc.*, No. 96-C-7850, 1997 WL 441796, at *7 (N.D. Ill. July 30, 1997) (finding § 1391(b)(2) inapplicable where the patentee defendant sent a cease-and-desist letter to the plaintiff in the forum state).[4] Accordingly, a substantial part of the events giving rise to the claims have not occurred in the Western District of Texas, but rather in the Eastern District of Texas, where PET and the patents are physically located and where the bulk of the enforcement activities have taken place.

Because a substantial part of the events or omission giving rise to the claim did not occur in the Western District of Texas, venue is not proper in this Court under § 1391(b)(2).[5] Having found no grounds for venue in the Western District of Texas, PET's motion to dismiss is due to be granted.

---

[4] As acknowledged by at least one other district court, it would be "anomalous" to find sending a cease-and-desist letter insufficient to establish minimum contacts for the purpose of establishing specific jurisdiction but sufficient to establish venue. *See Database Am., Inc. v. Bellsouth Advert. & Publ'g Co.*, 835 F. Supp. 1195, 1215 n.34 (D.N.J. 1993). To the extent other district courts have found venue proper based solely on the receipt of a cease-and-desist letter, these cases were decided before 28 U.S.C. § 1391(b)(2) was amended and are therefore inapplicable. *See Package Concepts & Materials, Inc. v. Jif-Pak*, No. 6:05-1184-HMH, 2005 WL 3055073, at *6 n.5 (D.S.C. Nov. 14, 2005) ("No published opinion in the last fifteen years has relied upon [*Millipore Corp. v. University Patents, Inc.*, 682 F. Supp. 227, 234 (D. Del. 1987)] and [*Pennwalt Corp. v. Horton Co.*, 582 F. Supp. 438, 440 (E.D. Pa. 1984)] for the exceedingly broad standard that those cases espouse, likely because the standard for determining venue was changed when 28 U.S.C. § 1391(b)(2) was amended, making venue no longer appropriate in the judicial district 'in which the claim arose' but rather in 'a judicial district in which a *substantial part* of the events or omissions giving rise to the claim occurred." (citing *Database*, 835 F. Supp. at 1224)).

[5] Having found venue lacking in this District, the Court need not address PET's argument the Court should decline to hear the declaratory judgment action on equitable grounds.

## C. Request for Jurisdictional Discovery

Finally, Broadway Bank requests a sixty-day period of jurisdictional discovery for the limited purpose of determining the full extent of PET's activities in the Western District of Texas. First, Broadway Bank hypothesizes the settlement agreement between PET and National Bank may disclose "additional activities" that support venue. Second, Broadway Bank suggests Liddle's statement "[n]o officer or employee of PET has ever traveled to the Western District of Texas for the purpose of conducting business of any kind on behalf of PET" is disingenuous. Broadway Bank intends to depose Liddle with regard to whether entering an appearance in the *National Bank* litigation constitutes "conducting business"in the Western District and about the activities of PET's agents, which Liddle "makes no mention of." Resp. [#13] at 12.

Issues concerning jurisdictional discovery, which are not unique to patent law, are governed by the law of the regional circuit. *Autogenomics*, 566 F.3d at 1021–22. As with all discovery matters, the question whether to permit jurisdictional discovery is committed to the district court's discretion. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)). A plaintiff seeking jurisdictional discovery is expected to identify with particularity the discovery sought, explain what information it expects to obtain, and explain how that information would support the assertion of personal jurisdiction; failure to do so warrants denial of leave to conduct the discovery. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014)

(citations omitted). The Court need not permit discovery on jurisdictional matters unless the motion to dismiss raises issues of fact. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F. 3d 841, 855 (5th Cir. 2000). When the lack of venue is clear, discovery would serve no purpose and should not be allowed. *Id.*; *see also Sanderson v. Spectrum Labs, Inc.*, No. 00-1872, 2000 WL 1909678, at *3 (7th Cir. 2000) ("We believe the same principles apply to a plaintiff's attempt to establish proper venue.").

The Court declines Broadway Bank's request for jurisdictional discovery. First, PET's motion does not raise any issues of fact; each of the jurisdictional allegations are undisputed. PET acknowledges sending multiple cease-and-desist letters to banks in the Western District and admits to agreeing to dismiss the *National Bank* litigation with prejudice. Taken together, these contacts do not support venue in the Western District for the reasons outlined above.

Second, the additional jurisdictional facts Broadway Bank hopes to uncover are irrelevant to the venue analysis. Deposing Liddle is harassing and serves no purpose; whether Liddle considers his attorney's appearance in the *National Bank* to be "conducting business" is wholly irrelevant, and further inquiry into the activity of PET's agents in the hopes Broadway Bank might reveal additional activities by PET in the Western District is a fishing expedition with no basis in the record. In short, this request casts too wide and vague a net. Similarly, discovery into the terms of PET's settlement with National Bank serves no purpose. PET acknowledges the settlement involved a non-exclusive license, which the Federal Circuit has clearly held is not the type of "other activity" which relates to the enforcement of patents for the purpose of personal jurisdiction. *See Avocent*, 552 F.3d at 1334–35; Reply [#14] at 9.

The proposed jurisdictional discovery would serve no purpose, and consequently, the Court denies Broadway Bank's motion.

**Conclusion**

Having found venue improper, the Court "must dismiss the case or may, in the interest of justice, transfer it to a district or division where it could have been brought." 28 U.S.C. § 1406(a). The Court finds this case to be a prime candidate for transfer and thereby transfers this matter to the Eastern District of Texas. First, venue is undoubtedly proper in the Eastern District of Texas, as PET can be said to reside there for purposes of § 1391(b)(1) and § 1391(d). Second, judicial efficiency counsels in favor of transfer. PET has already filed four active lawsuits in the Eastern District related to the enforcement of the '399 and '550 patents, two of which are being defended by counsel for Broadway Bank. Under these circumstances, transfer would save the parties time and expense of potentially duplicative litigation in multiple judicial districts and transfer, rather than dismissal, will avoid the expense and delay of having to re-file. Finally, litigating in the Eastern District of Texas will not be unduly burdensome or inconvenient for Broadway Bank. The prejudice on Broadway Bank to litigate in the Eastern District does not outweigh the inefficiency of entertaining multiple related infringement actions in separate districts. While the Court refuses to imply Broadway Bank filed suit in this District for the purpose of harassment and to raise the cost of litigation for PET, it does find that efficiency requires the case be transferred to the Eastern District.

Accordingly,

IT IS HEREBY ORDERED that Defendant Plano Encryption Technologies, LLC's Motion to Dismiss Plaintiff Broadway National Bank d/b/a Broadway Bank's Original Complaint [#10] is GRANTED;

IT IS FINALLY ORDERED that this case is TRANSFERRED to the United States District Court for the Eastern District of Texas, Marshall Division.

SIGNED this the 28th day of March 2016.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE